Our next case is the United States of America v. Nicholas Lucidonio. Mr. Kaminsky, good morning. Good morning, Your Honor. I am Kaminsky on behalf of Nicholas Lucidonio. This is another guideline case, but involving a different portion of the guideline with different analysis. We represent Nicholas Lucidonio. He was, he's involved now, at the time of the case, involved with Tony Lukes, which is now known as Tony and Nikki Stakes. He pled guilty to a client conspiracy charge. Let me see. Could you put the mic just a tad closer to you? Oh, sorry, Your Honor. You want me to start over or? No, go ahead. Okay. Who was involved, who pled guilty to a client conspiracy charge, which is an unusual type of tax conspiracy, which we're going to talk about today, and the district court judge sentenced him to 20 months in prison, involving in part a little-used-up-to-this-point guideline adjustment called 2T1.9. Because of the unusual nature of the adjustment, the government agreed to let the defense take an appeal if the guideline was imposed, and the guideline adjustment was imposed, and we're here today. So let me ask you. Are the employees, were the employees then co-conspirators? Absolutely. That's one of our main positions. They're not identified as indicted or unindicted co-conspirators in the indictment, correct? That's correct, Your Honor. The government cannot, let me jump to that point. You jump right to the exception, which is one of our strongest positions. This guideline, if you don't have a view of what this exception implies, the carve-out for co-conspirators will cover absolutely everything. We looked before the argument today, we pulled out the Justice Department tax division manual, and they have a whole bunch of client conspiracies by circuit, and there are over 100. And without a strong carve-out of what the commission intended here, all those, all those, each one of those 100 plus, you could have had this enhancement. Now, the indictment in this case had people known and unknown to the grand jury. It's not just, it's not just our client and his father who eventually pled guilty. Two, the informants in this case were granted immunity, as was an accountant. So you have at least three other conspirators, and I'll get to the workers in a moment. Fourth, there was an organizer or leader adjustment imposed here on the father, which means you had more than five participants in the offense. Now, in this. Participant, a co-conspirator? Yes. The enhancement for the father was for an organizer or leader. So it means you either had extensive outsiders or you had five or more participants. Is a participant the same thing as a co-conspirator? That's an interesting question. The guideline talks about, that's a fascinating question. We could write a book about it, but we don't have the time, so let me try to cut to the chase. The guideline uses the word co-conspirator. That's a broad term. It's especially broad with a client conspiracy, which all it requires is somebody who goes along with, even if you don't know all the facts, goes along with what's going on. In this particular case, it's a cash payroll case. The employees were getting 400 bucks, for example. The 400 bucks you would normally get 320 to take home. But when they got their paycheck, there wasn't 320 in it. There was 400 or 450. There was extra cash put in. And the employees knew every week there was extra cash in their paycheck. And when they got a W-2 at the end of the year, the paycheck was, you know, the W-2 was not for the 450. It was for the 400 minus what was withdrawn. And just as important, in this type of scheme, the employee saves Social Security portion. There's an employer's portion and an employee's portion. He saves the employee's portion of the Social Security withholding otherwise, and his taxes. And each employee got a W-2, and each employee filed a tax return, and they have to be considered co-conspirators. We grant you the application note uses the word participant. That may be even a broader concept. Do they have to be co-conspirators and be charged conspiracy? Absolutely not. There's nothing in the guideline which says that. The court relied on an application note which talked about just not charging a husband and wife if there was a joint tax return. There's nothing in that guideline which talks about leaving people who aren't charged in the charging document. And what they were trying to get at, there's only a thread or two here of history to draw from, but what they wanted to get at was tax protesters, accountants running phony deduction schemes, and tax shelter promoters. Yes, sir? Do we get there with respect to that application note if the guideline is unambiguous? Yes. Because it's genuinely ambiguous in order to be able to consult the application. We think no longer, Judge. That takes us to lope or bright. We think after lope or bright, there is no deference to this guideline, and therefore, this court is going to be able to use its entire toolkit. It doesn't have to be limited anymore to Nassir and Adir. We can talk about that, but the commission is very different than part of the executive branch, isn't it? Yes, Your Honor. So how does lope or bright even apply? We think lope or bright applies because the commission framework requires, for example, that notice and comment occur for every guideline. This particular guideline may be the only guideline. There was no notice and comment, so we don't think there's any deference to this particular guideline. And, in fact, the guideline may well be invalid, which nobody discovered until after lope or bright came down in the Administrative Procedures Act. A portion of lope or bright was examined carefully by practitioners, including defense law. As Judge Becker used to say, that might be the next case, but that's not this case. Well, the court permitted us to brief on lope or bright, and the issue is before the court about whether notice and comment, and was briefed in the reply brief. We held in our opening brief the right to respond based on the Supreme Court decisions that came down, and we briefed it in the reply brief, and then this court sought supplemental briefing on lope or bright. The facts are clear here. There was no notice and comment for this guideline. It went right to the commission. It went right to Congress in May of 1987 without any previous 2T1.9 guideline. Would your stronger argument be that the guideline here is unambiguous in terms of co-conspirators, and therefore I don't need to rely on the application note? Yes. We always accept a friendly recommendation from the court, yes. The easiest way out of this case is to find that the conspiracy exception applies. It is unambiguous on that point, and the court misapplied and misapplied its reading of the guideline because, again, it relied on a different application note which has no applicability here. And the only thing that I can see, or one of the things I can see that could argue against that, is that the crime involved is 371. It's a conspiracy. And to have that under, the elements of that under recent decision of Starfo, you have to prove an agreement between two or more persons to achieve an unlawful goal. The defendant intentionally joined the agreement with knowledge of the objective, and then there was an overt act in furtherance. None of these employees were named defendants. So for them to be co-conspirators, you're saying they don't have to be named defendants because? I'll give the court an analogy. The Zerto's case, which both parties cited below, the government, that case went to trial. They immunized all the employees. Otherwise, they had no case to try. So that's the analogy. This type of conspiracy is based on the employees going along and filing returns which they know are not accurate, whether they're named or not named. In the indictment, we think has no bearing. And the government, more importantly, shouldn't be able to create an enhancement simply by deciding how they're going to put together the charging instrument. The commission used the word conspiracy and conspirator. That has, I think, the normal term. A client conspiracy on a cash payroll cannot operate without the employees and the employees' involvement and the employees filing the returns. Because the employer is only saving, frankly, half his Social Security benefits that he would have to pay. And otherwise, he's just not withholding money which is due by each employee who is getting a cash payroll. It seems obvious enough and straightforward enough that it has to be, and the government, again, can't manipulate it by a charging document. Two, in a case where they immunized people who were part of the scheme who were employees. Three, where there was an organizer adjustment. And four, where you can't operate this without the employees' participation, whether you use the word conspirator or participation if you get to the application note. And we don't think any of that. We thought, again, our primary position was there was no ambiguity that we should win this on the plain construction. The district court, it happens once in a while, the district court got this wrong. And our client was sentenced to too heavy a sentence. And the government hasn't argued we wouldn't have a right to a remand on sentencing. And we believe this case should be remanded for a resentencing. And as the court noted, the easiest way to do it is with the co-conspirator exception. I also note that there's been a lot of discussion recently on the rule of lenity. I'd just take a moment on that. There were views that if there was Chevron deference, you couldn't reach a rule of lenity issue. We briefed that. And the rule of lenity, clearly, after Loeb or Bright, whatever the strength was, it is stronger now. And if there's any question about how to interpret it, this exception, we believe we should get the benefit of it. The rule of lenity is usually if you have two plausible interpretations of a guideline, you're not, and they're roughly in equipoise, you're not going to choose the one that is the harshest because there's just not enough there. So what's Loeb or Bright got to do with that? Isn't it more like the concurrence of Judge Bevis in Nasir or the Fleming case? Actually, there was a fair amount of commentary in Loeb or Bright about people couldn't use the rule at all if there was deference to a guideline or deference to an application note. And there was commentary. There was language in the majority opinion by the Chief Justice that whatever that prior rule was, that you couldn't apply the rule of lenity, that was gone now. And whatever the view of or whatever the scope of that rule is, is reinvigorated, in our view, by the Loeb or Bright decision. We spent a lot of time on the second issue, the co-conspirator issue, but I want to go back to the first issue and just ask you to help me understand. What's your best argument that there was no encouragement of the employers, of the employees to violate the Internal Revenue Code or to impede? I think it says something like the calculation of revenue or something like that. How do we not have that here? Of course, the language, again, our view is this enhancement is to be limited. Because it's limited because, again, you have a thread from the earlier guidelines they didn't adopt. The tax guidelines, not this 2T1.9 guideline. And in the earlier guidelines, they said specifically you're already getting an enhancement for relevant conduct. If I can continue, Your Honor, and answer your question. You're already getting an enhancement for relevant conduct based on the size of the tax loss. And our client and his father were both sentenced at a higher level because of the relevant conduct enhancement based on the tax loss, based on the taxes not paid by the employees. And, therefore, the commission didn't want a second enhancement for the same conduct. So initially they weren't going to have anything for encouraging. The second draft had encouraging language but limited to return prepared fraud, tax protesters, tax shelter promoters. And it wasn't to pick up the world about where you could otherwise get from conduct intending to encourage. So there had to be limits on it. We cited a Seventh Circuit case by now Justice Gorsuch, which talks about intending and the tax loss context. Is that Seventh Circuit or 10th Circuit? I'm sorry, 10th Circuit. Forgive me, Your Honor. He would be upset I got the Circuit Court. I think he was in Denver, yes. 10th Circuit. It was now in the Supreme Court. That he has a long discussion about the monopenal code and what intending has to mean. And there wasn't enough evidence here, if any, of the intention by our client, as opposed to perhaps his father, to do any of this. And it was just in this official record. Why isn't the issuance of a false W-2 enough to show conduct intended to encourage violation? First, it's got to be a conscious design. And our client's not issuing the W-2s at all. He's handling out some cash during the weeks. So we think there's a factual, you know, disconnect with that. But our view was it had to be active rather than just issuing a form. Because otherwise it wouldn't cover everything unless you view the co-conspirator exception as a clarifying factor. So the court can either reverse on this isn't enough for his intention to, you know, to assist this. Or you can reverse, perhaps the easiest way, as we pointed out, is on the conspiracy exception. And I guess I'm trying to understand what precisely you mean. And I recognize that there are two different ways to get at the two questions raised here. But what do you mean by active? He had to talk to somebody and say, don't report your taxes. He had to tell an employee, you're getting cash, don't report your taxes. And there is, well, we actually have a similar issue from the last argument. There's a piece on this record where the court claimed to have relied on a statement made by a co-conspirator who was immunized. And that has problems for five different levels. One, it's an immunized employee, so that is a co-conspirator. There's no question about that. That was one of the relatives. Two, it was contradicted. It was actually contradicted in the record. Every employee who got interviewed, and the government did a massive, intensive investigation here, because of the well-known nature of the business, and not a single employee said we were ever spoken to about paying our taxes by anybody at the business, either our client or his father. Nothing. Do they really need to speak to them? Isn't it kind of obvious what was going on there? Wasn't the conduct enough? Well, it may or may not be obvious, but in terms of you have to have something to support it, and the court's support just isn't there. You draw the inference that everybody had to know somebody had to talk to them, but if you're talking about actual evidence, there wasn't any. I'll stop here and save my remaining time for rebuttal. How much time do you have on rebuttal? Four minutes, your Honor. Okay, thanks. I'm sorry, three minutes, three minutes, three minutes. We ignored it anyway. Good morning, may it please the courts. My name is Greg Knapp. I'm from the Department of Justice Tax Division. I get the impression that the pressure point here might be whether or not these employees were co-conspirators or not. So unless the court has another preference, I'll dim the lights. And I do want to comment on why the district court did not clearly err and find that they were not co-conspirators. But first, if I may just take a moment and explain why the government's decision to charge the conspiracy the way it did and to pursue this encouraging others enhancement is actually an exercise of prosecutorial restraint and it helps the defendant. Because the government chose to, in its view of the evidence, was that there are only two conspirators, the defendant and his father, and that all the employees are just encouraged. And so he only gets a two-level enhancement under 2T1.9. The alternative, and the one which, ironically, my colleague seems to be advocating, is that we should have treated all the employees as co-conspirators. Well, if that were the case, if the government could prove that, that instead of a two-level enhancement under 2T1.9, you'd be looking at a four-level enhancement under 3B1.1, the aggravating role enhancement. Because that would be a clearly extensive activity involving multiple co-conspirators. But the main argument would be, looking at the literal words of the statute, or the guidelines, excuse me, if the conduct was intended to encourage persons other than or in addition to co-conspirators. And so if you're unindicted, you can still be a co-conspirator. If you're named or not named, as the indictment says in the indictment, then you're part of the scheme. It seems here, just practically looking at it, when you onboard an employee, this employee has to understand, here's what's going to happen. Here's how pay is going to be done. You're going to get this. You're going to get a check. You're going to sign the check back. We're going to give you cash. You're better off. We're better off. And how is that, whether indicted or unindicted, not a co-conspirator? Because I think that conspiracy has to relate to the actual conspiracy of conviction. The guideline, 2T1.9, it assumes there's a conspiracy conviction. If there's no conspiracy, there's no potential application. Well, it's agreement among two or more persons to achieve an unlawful goal. That's met. And it said, I did ask Mr. Kaminsky about the defendant, but you intentionally join with the objective of furthering the goal, and there's an overt act in furtherance of it. These employees seem to meet that in all three elements, front and center. Perhaps with respect to a hypothetical conspiracy to evade the employee's income taxes. But that's not the conspiracy here. That's not the conspiracy to which the defendant seemed to jump. But they're also helping the conspiracy of Mr. Lucadonio in order to avoid paying higher employer taxes, right? That's why I disagree. I don't think there's evidence, or at the very least, I don't think the district court clearly erred in failing to find the evidence that the employees actually entered into agreement with respect to the evasion of the employer's payroll taxes. But they would have to know, it helps you, it helps me, right? I don't know that. I mean, there are certain statements from the employees in the memorandum of interview that the defendant, Nicholas Lucadonio, would do favors for good employees by modulating their hours on the books, and so that they could retain certain benefits. So this all came to light when some of the employees basically said, wait a minute, we've got to call a halt to this, there's a problem. Correct, yes. So they knew for sure that it was an attempt to pay lesser employer taxes. But that doesn't mean that all the employees knew. Do they all need to know? Same question. Well, no, because the employee, I mean, the enhancement applies if there's any other person who is encouraged, right? In fact, we have the Kelly case from 1989, the failure to prove that all named co-conspirators conspired with the defendant is not fatal to the government's case. Correct. But that's a separate issue as to whether or not there were some other non-conspirators who were in fact encouraged to commit a separate tax violation, the violation of the income tax laws. Why wouldn't the payroll tax fraud allow us to loop in the employees since FICA taxes are borne by both parties, both the employer and employee? That goes back to what's the evidence. I mean, is there evidence that the employees entered into an agreement to evade that portion of the taxes? Wait a minute, I want to understand exactly what this must look like. So would a person have to sit down and say, so I'm going to pay you in cash, it's going to benefit both of us. You're going to get more in your pocket because you pay less in taxes. Is that enough? Or do they have to say, you will pay less in FICA taxes? I mean, what exactly has to happen? Well, I think there has to be something so that the employee knows that the employer's portion is not being paid to include that in the conspiracy because that's the charge here. I mean, the government's position is that the charges, the conspiracy, are what the defendant pleaded guilty to. His attempt to evade his own income taxes and his own payroll taxes. So in my example, in the onboarding, whoever's doing it, CI1, CI2 says, all right, this is going to help us both out. It will save me in taxes. It will save you in taxes. It benefits us both. Is that enough? That could be, but we just don't have that. We don't have evidence that, in fact, with respect to the payroll tax, that you're going to benefit me too. I'm going to not be able to pay FICA. That's just perhaps some employees intuited that, some of the savvier ones. But there's more than sufficient evidence for the district court to conclude that at least some employees just weren't part of that agreement. They were just going along with what their employer said, perhaps trusting their employer, just acquiescing, to use the words of the district court. So wait a minute. You said there is evidence that at least some of them are just going along with it. So is it your position that that conversation happens sometimes or not all the time? I don't know of any conversation that ever took place with respect to the purpose of evading the payroll taxes between the employer, the conspirators, Nicholas and Anthony Lucidoneo, and the employees. And to be clear, I'm pretty sure that the briefing that I've read said there is onboarding and folks are made aware that they will benefit because they pay less in taxes. That is not enough. They also had to be told, and the employer pays less in taxes. I mean, our position is simply that that's the encouragement, right? This is why going along with this will be beneficial to you. That's to violate your own income tax obligations. In our view, in the district court's view, that just doesn't rise to all the employees, all 30 or 40 employees getting on board and agreeing to participate in the payroll tax fraud that was occurring in the main office. And I would add that there were... So let's assume that we send this back to Judge McHugh and ask him to have an evidentiary hearing. Would the government be in a position to bring folks in to say, hey, I didn't know there was any sort of conspiracy here. I was just figuring an extra couple of bucks in my pocket. I don't know. The government called witnesses during the investigation of this case. I suppose that's what it would look like. If this guideline were believed to be ambiguous, then we can look at Application Note 4, can we not? If the court has exhausted its prerogative judicial... Because it talks about participants in the scheme, but what they're looking toward is the people out there you don't know about. I want you taxpaying Americans no longer to pay your taxes. It's a tax protest. You have a fraudulent security scheme. And that's way beyond the people that are involved in the actual conspiracy or participating in it, even if they are not indicted or named co-conspirators. So that would seem to cut against you, would it not? Well, I'm not sure. I mean, it seems to me that some of the same questions that we are raising here today could be raised in that hypothetical. If you've got a promoter out there selling some tax shelter and persons go along to go along with it, perhaps one can make the argument that, well, why aren't they co-conspirators too? They agreed. Scratch your back, I scratch mine. That would not be the government's position. Because they're not part of the actual... It's a smaller scheme, and then you have a broader group out there. We're not going to say that these people are involved. But here you've got a small group. You have to know what's going on in order to be onboarded. You have to know what's going on in order to get less taxes for yourself. And you have to know what's going on, or at least some of them, because you know the purpose is so that the boss doesn't have to pay higher employer taxes. Well, I guess I disagree with that characterization, if I may. I think what had to be known as part of the onboarding process, like this is how you're getting paid. You're getting your cash. Here's your paycheck with the official wages, but here's the actual cash you're making. That is how I read the testimony as what's the onboarding process. That's pretty different from any way I've ever been paid, or you, or anyone else in this room. Much different, yeah. But, again, that's the income taxing. You know, I think to your earlier point about there's this one group and another group, that's essentially the argument that we're making. It's just that the group here, the conspiracy group, is with respect to the payroll taxes and the income taxes of the business. The larger group who are encouraged to commit another uncharged income tax violation are the employees. Walk me through how these folks are not unindicted co-conspirators in the conspiracy to defraud the United States. How are they not co-conspirators? I don't know what more I can add than what I said before, that the conspiracy that the government thought it could prove was a conspiracy to defraud with respect to the businesses and the defendants' income and payroll taxes. These employees, at various levels of sophistication, they went along with it, perhaps. We can infer that many of them knew that it was not above board, but there's also some indication that some may have simply been trusting their employer, going along with it, doing as they were told. And I know I've said this before, but there's just no evidence that any employee, like, entered into an agreement with respect to the payroll tax fraud and the income tax angle. So, basically, you're saying, thinking about our en banc case in State versus Regus, it says that for a client conspiracy, you have to have an agreement to defraud the United States. You're saying, listen, judges, respectfully, you're reading that too broadly. It cannot just be an agreement to defraud the United States. It has to be an agreement to defraud the United States in the way that resulted in the conviction. I think that partially. I think that 2T1.9 has to be applied by looking at the actual conspiracy that was the subject of the plea agreement, not some hypothetical larger conspiracy that the government might have pursued. I mean, because we could always try to expand the bubble further, right? I mean, but I think this guideline, 2T1.9, it only has meaning, it only has context, if you look at what was actually the subject of the conviction, because that must be the starting point in order to apply the guidelines. So they have to be conspirators in the charge defense? Yes. And your position is that some of these folks, if not all of them, were not conspirators in the charge defense? Correct. So I'm trying to understand, looking at the indictment, charged versus what he actually pled to, is there not a difference here? I don't believe so. What was charged is that conspiracy, the so-called client conspiracy, but the objects of that charge conspiracy was to defraud the IRS with respect to the income taxes and the payroll taxes owed by the defendants and their business. That was the conspiracy. The broader conduct that we chose to prove as encouraged violations, additional violations, was the employees simply not paying their income taxes, because they were encouraged not to do so. And just one final point with respect to this question of charge versus not charge. I mean, the commentary, to the extent it's relevant, I think that does provide a distinction, because in that commentary, the commission makes clear that this does not apply to those who are directly involved in defense, which is a little stronger than the standard you might find in 3D1.1 for aggravating woe. There was a discussion earlier about participants. I read that commentary as to 2D1.9 as saying, no, no, no, not just participants, but in order to be excluded, they have to be directly involved in defense. And so we read that co-terminus with what the guy that actually says, that is co-conspirators, like the only people who are excluded are co-conspirators to the offense. That was the subject of the conviction. Before you sit down, might you address the Loper-Bright argument made by your opposing counsel? Yes. We feel that Loper-Bright plainly does not affect the decision of the application of this guideline, because Loper-Bright simply does not unsettle the deference that is due to the guidelines. Loper-Bright addressed a separate issue of whether to overrule Chevron, which previously had bound courts to defer to an executive agency's interpretation of an ambiguous statute, but as has been observed, there's no executive agency action here. Moreover, there's not even any really statute that we're interpreting. It's a guidelines question. Thank you. Your Honor, let me just pick up on a few points. In every tax shelter case I've been in, the reason the commission may have been, was concerned about it is, you have an opinion of counsel. I've never worked a tax shelter case where the lawyer didn't want an opinion saying these deductions were okay. That's an innocent bystander. You have support from a legal opinion, and that's what they were worried about. They were worried about people peddling tax shelters where there were, in fact, innocent bystanders. This indictment, the indictment we're talking about here, talks about the tax fraud scheme, which says paying employees in cash off the books. It's right in the indictment, and the conspiracy account said, specifically says on page seven, you know, did unlawfully and voluntarily with each other and others known and unknown to the grand jury. And you have in your appendix, the appendix submitted by the parties, what you have are all the employees who testified. And the employees every other week get a W-2, and if they're getting $400 in their paycheck, the W-2 said, you know, I'm sorry, they're getting a paycheck every two weeks. The W-2 is the end of the year. The paycheck every week says they're getting $400, they should take home $320. But they're not getting $320. They're getting $400. So they know at the inception, every two weeks when they get paid, they're getting more money than the withholding amount. And most of this is benefiting them, not the employer. That's why it is. Does that make them co-conspirators in the charge defense? Yeah. It makes them unindicted, absolutely unindicted co-conspirators. And argue they don't have to be charged. Conspiracy doctrine, you know, the persistence says you don't have to be charged with a disease. You don't have to be convicted for a conspiracy. The case is a cash payroll case. But your friend on the other side says it has to be in the charge defense. And they say that the charge defense is the payroll fraud. And so his point is they weren't told that the employer would benefit from this. Why is what your friend on the other side is telling us incorrect under the law? Why is that the wrong way to view this? Because the essence of the scheme is almost all the money, it doesn't matter. I'm not quite sure, let me back up a second. I'm not sure I understand the government's position. If half the FICA tax isn't getting paid and the withholding tax isn't getting paid for the employee, that's the vast majority of the money you're talking about here. There may be other participants that the business did get some benefit, but the employees are getting the vast, vast majority of the benefit and they're filing tax returns which reflect their W-2s and they're not filing tax returns reflect what they really got. That's a co-conspirator. That's somebody who got a benefit, agreed to take the benefit of it, and in a client conspiracy, you don't even need a loss, by the way. You know, the conspiracy itself just says a scheme to impede or impair. And this is a scheme to impede or impair and the employees are the essential portions of it. I think the government's argument is that they may be a co-conspirator, but with respect to an entirely different crime. But this is the crime in the indictment. The crime in the indictment is the kind of, it's not a different crime. This is what they charge in the indictment. I was just reading from page three of the indictment. But the indictment is charging for failure to pay the right amount of employer taxes. The employee may know of something that maybe it's helping me and maybe I should be violating tax law, but I had no idea that the employer is doing this for the employer's sake. I thought I was just getting a benefit. There's no evidence of that. And remember, our clients got sentenced on the employee's portion that didn't get paid and our client got sentenced on the income tax portion that didn't get paid. The amount saved over time was what, $480,000? Excuse me? The amount saved over time was what? That's the $480,000. Our client also got sentenced. But that was the employer taxes, correct? No, that's the entire, no, no. That's the employer, the employee, and the income taxes. That's all three components. Okay. I'll stop there. Thank you, Your Honor. Thank you. We'll thank counsel for their arguments.